morning may it please the court I'm Arthur Wachtell on behalf of the appellant and seated at council table is Elizabeth Faulk, amicus curiae. Well I just think this is is wrong and the court should not approve. Before you get started in the argument will you be sharing time with Miss Faulk? Have you or would she be giving oral arguments? Yes your honor. All right have you arranged? Yes. Time you'll share? All right you have a total of 20 minutes and however you allocate among yourselves is just fine. Your honor if I may, Elizabeth Faulk on behalf of the federal public defender. There was an order issued in this case on Friday granting a separate argument for five minutes. Oh I appreciate being reminded of that. That is correct. You declined to allow her to have any part of your test your argument time is that correct? Well I think we've worked it out but we've read the court's orders. All right which you now interpret as meaning what? 25 minutes 20 for a pair. All right 20 for you and 5 for you. All right then we understand each other. All right very fine you may proceed Mr. Wachtell. Well we think this is wrong. I think that let me just start out with a procedural background so we all understand exactly what happened. Mr. Gementera was sentenced to two months for rifling having his partner rifle through mailboxes at an apartment complex. Mr. Gementera was the local And instead ordered 100 hours at the post office. Before you get to sentence, isn't it correct that he repeated within the confines of this proceeding he was arrested and processed and then released and then repeated the offense? Am I correct about that? You said it exactly correctly. Arrested before he could self surrender on his two month sentence. Did virtually the precise crime. Again. And the court before the rearrest had imposed the 100 hours at the post office. But then we filed a rule 35 motion at the hearing on the rule 35 motion where we sought to show that the sandwich board order was clearly erroneous. We propose some alternatives, which the district court adopted. It agreed with our proposal that Mr. Jim and Tara should go to a post office and watch activity at the lost and found so that he could. Appreciate what people go through. The district court adopted my suggestion that Mr. Jim and Tara speak to high school students on three occasions. For rehabilitation purposes and finally, the district court adopted my recommendation that Mr. Jim and Tara, together with me, go through the rule 16 discovery, ascertain the name of every victim we could and write a letter of apology. But the district court would not get off the sandwich board thing and said, but he's still got to go to the post office and he still has to go to the post office. He still has to wear that on four days. Excuse me for one eight hour day. And that's why we're here today. Was it originally 100 hours? Yes. And now it's reduced to a one eight hour day with the sandwich board or a sign that has the writing I've talked about on both sides. And what needs to be understood is what the district court said when it originally imposed the 100 hours. And the district court said the idea behind this is humiliation to make him understand society's disapproval. It should be humiliation of having to stand and be labeled. And then he'll get a taste of just exactly what the consequences to people are of his activity. And that's just wrong and doesn't stand up to it. All right. You said wrong many times, counsel. Specifically, there are two issues. Are there not? Whether this is allowed by the sentencing provisions. And then secondly, whether it's a violation of the Eighth Amendment. Why don't you talk about the sentencing rules first? In order to be valid under the sentencing rules, it has to address rehabilitation or punishment. And it doesn't address rehabilitation because it's pure humiliation. And pure humiliation has nothing to do with rehabilitation. There are components of Is it a better or worse alternative than a year in jail? Oh, it's clearly — I don't think there's any comparison. And I would — I would say to this Court that if a person was put in prison for a year, we still would never order that person to stand in — if a warden ordered a prisoner to wear a sandwich board, this Court would strike that down. This Court would not permit that. So it doesn't really matter whether or not he's going to serve more or less time in prison. The issue is whether or not this is a legal condition. And in terms of the question, it's focused on rehabilitation. Is it — can a persuasive argument be made one way or the other that he's less likely to become a repeat recidivist, if that's not a redundant phrase, serving a year in jail or undergoing this eight hours of shaming, if you will? I don't think that anyone knows. I think that what we do know is that imprisonment is a legitimate form of punishment and that it's an acceptable component of our criminal justice system. But humiliation is not an accepted component of our criminal justice system for humiliation's sake. I understand what the Court asks. Something motivates someone to steal mail. And who knows? It's — psychology is complex. But perhaps a component of it is the feeling that it's not that big a deal and it doesn't have that much of an impact and whatever. But it does. In the age of identity theft, you take someone's Social Security number and you can ruin their credit history, their ability to pay their home mortgage. You can virtually turn their life upside down by the simple act of taking a bank statement out of the mail. And it apparently appeared to Judge Williams that nothing else would convince your client to stop doing this. Well, that is not supported by the record. And the — frankly, the answer to the Court's question is very simple. It's not that complex. The answer to the Court's question is that, as the PSI identified, he has a substance abuse problem. He has no coping skills. He had no family upbringing. He has a very young child. And he needs to get education. He needs to get rehabilitation. He needs to get substance abuse treatment. He said in the PSI, Mr. Giamenterra, I want to accept that. The probation officer recommended all that. That's what would get at the problem. Humiliation never solves this kind of problem for this kind of young kid or for anybody else. You think that's more humiliating than the lectures that he had to deliver at the high school? No, not at all, because the business of going to the high school, I agree, has a humiliating component to it. Just showing up for an arraignment is — has a component of humiliation. The whole process is humiliating to a criminal defendant. It's always associated in some measure with what we do. But this was just 100 percent humiliation for humiliation's sake. And so I don't think it qualifies as rehabilitation or punishment. You think that wearing the signboard is the humiliation or just the — what the message he conveys? Because if he were in the high school, he'd convey the same message, I suppose, to young kids. And at the post office, he conveys it by a sandwich board. What if he just orally told everybody at the post office as they came in that I've been convicted of mail, stealing from the mail and so forth? Think that would be okay? I think that — I think that an organized activity at a school that is directed toward education, its primary objective is to educate the students and to give insight to the perpetrator, is a far cry from having someone go up to random people in public not knowing what their reaction is going to be. That is just pure humiliation. Besides all the other problems that we've talked about that attend that kind of activity. Suppose the condition had been this, that he was required to go to the post office for a period of time. And when individuals came in and reported their mail stolen, he was required to approach them and tell them that he had been convicted of mail theft and this was part of his rehabilitation to talk with people and apologize to them and try to understand the impact that this can have on people's lives. Would that be different? Well, if that were to be added to the proposal I made, which was to stand and watch people at the lost and found window so that he could appreciate, what we're trying to do is — I mean, saying to the world through a sign, I'm a mail thief and this is my punishment. And sitting in the post office and when someone comes in and says my mail was stolen, having to talk with them and tell them, I'm here, this is part of my rehabilitation, I stole some mail in the past and I want to talk to you about it, if you're willing. Is there a difference between those two things? Sure there's a difference. Yes, and of course that's a clue. It's not humiliating to talk to one individual victim. It's not humiliating to talk to a class of high school students, but it is humiliating to wear or carry a sign. Because of the stigma that is attached to exposing oneself in public in a singular fashion where a crowd views an individual and that individual is differentiated among all the people, whereas what the court proposes is a one-on-one contact where under the court's hypothetical it would be two individuals and no other association with the rest of the crowd at the post office. There's a fundamental difference between the two and it goes back to the shaming conditions that have been disapproved in the modern era for years and years and years. It occurred to me this morning that the reason there is no federal case on point is that I don't believe any federal district judge has ever understood that a district judge had this kind of power. And we have a history of lots of judges in this country and we don't see one decision in the federal courts where this has occurred. Actually, I was looking at one of our string sites and it occurred to me that there is one decision that we didn't pay too much attention to and I noticed it last night and that's the Springer case, S-P-R-I-N-G-E-R. And that was a 1945 case during World War II where a draft dodger was sentenced to give one pint of blood. And two of the concurring judges said, no, that's an invasion of privacy. But it occurred to me and struck it down. But it occurred to me that it wasn't the district judge in that case saying, you will not risk your blood for the country so we will force you to give blood. And really it wasn't the point of that humiliation. And so that's really the one example in all the federal research that we've done that I can find where, in my view, that's what the district judge was seeking to accomplish in that case. And I think when you look at that case and you look at the three state court decisions we've cited, most of the courts in one way or another do not squarely confront the issue and duck it either on statutory grounds or otherwise, but they don't really squarely confront what's presented. But if you look at what the courts are talking about, if you look at the Hackler case in California, what you see is that the courts are saying there really is no rational relationship between pure humiliation and rehabilitation or punishment. And I think what the Hackler court said is that to the extent that there is a punishment component or to the extent that there might be some rehabilitation, the detriment and the problems and the history of why we don't do this far outweigh whatever benefit there might be. Roberts. You're reserved the rest of your time, counsel. Thank you. Ms. Fogg, please. Good morning. My name is Elizabeth Fogg. I'm an assistant federal public defender. Our office has taken an interest in this case because we believe the sentence is illegal. We believe it both violates the Sentencing Reform Act, specifically 3583, the section authorizing a district judge to impose discretionary conditions of supervised release. We also believe it is violative of the Constitution. Because my time is brief, I wish to focus on the Sentencing Reform Act primarily. Now, on page 19 of Apelli's brief, they concede the fact that Congress deliberately did not include permission for a district judge to impose a condition of supervised relief for the purposes of punishment. And that's reflected in Congress's decision to omit a reference to 3553A2A when writing 3583. Now, that's conceded on page 19 of Apelli's brief. If you start with the acceptance of the premise that punishment is not an appropriate intent or effect for a condition of supervised release, then what remains is to show that this condition is punitive. It's punishment. It's punishment in its intent, and it's punishment in its effect. And even though in the written order that the district court issued, which is included in the excerpts of record, the district court attempted to draw a parallel between this condition and deterrence and rehabilitation, the court's own words evidence that it's punishment. If you look at the excerpts of record on page 23, 25, 31, 38, and 44, the district court expresses this impermissible intent. In United States v. Jackson, this court, the Ninth Circuit, agreed with Amicus' analysis, which actually, since they came up with it first, I will say Amicus agrees with the Jackson court's analysis, that punishment is an impermissible motivation. And they draw the same parallel. Punishment is an impermissible motivation? For imposing a condition of supervised release. It's stated in the Jackson case, Your Honor, that Congress and basically, the Jackson case was when this circuit decided if a mandatory drug testing condition was appropriate for a punitive condition, and it did that on ex post facto grounds, because the defendant in that case was arguing that the guidelines had been impermissibly applied to him. That's not the important aspect of the case. Do you not think that since there's you cannot impose punishment as a condition of supervised release, that these lectures at the school or the writing to these different victims is punishment itself? That's not punishment in the same way that forcing someone to label themselves and walk in front of a post office is punishment. A little more punishment than the others, is that what you're saying? Because the act of throwing a defendant out in a public sphere wearing a sandwich board, there's a direct historical antecedent to putting someone in a stockade or putting someone in a pillory. It's a forced public shaming in a public coming and going where setting up a forum for high schoolers where a defendant could give a lecture, for instance, informing high schoolers of the decisions he's made that are wrong, that carries on as somewhat, that can be framed in an almost heroic way. That is a way for a defendant to relay what has happened to him to a group of youth who are there, who are required to pay attention to him, who believe that because he has something to say, they have to sit and pay attention. That is a completely different genre in our office's opinion than forcing someone to wear a sandwich board in public. So if Judge Williams had said as part of the conditions of release that when you speak to these high school students, you must begin your speech with this phrase, my name is Sean Jimenitera, I am a male thief, this is part of my punishment. That's not what the district court did. Okay, they did. Would that be different than wearing the sign? I think it is different. I would have a problem with him requiring the defendant to say certain words, but it is different. How? It's different because the act of forcing someone to wear a sign and ringing a bell is more directly correlated to putting someone in a stockade. And a classroom where a bunch of students are going to be listening to the defendant is not the same force thrusting into the public arena as is putting a defendant in front of 25 students in a classroom or 50 students in a classroom, where it's couched as this is an educational experience. There is a correlating benefit to a condition that requires a defendant to give a speech, Your Honor. And that could potentially serve rehabilitative purposes because of the heroic element. It also could serve deterrent purposes to those children in a general way. Thank you, counsel. Your time has expired. We'll hear from the government. May it please the court. My name is Kelly Brooks-Snyder and I represent the United States. The district court imposed this condition of supervised release to demonstrate to Gentleman Terra that his actions had real consequences and real victims. It really is humiliation, isn't it? There is a humiliation. That's the bottom line purpose of this, isn't it? With all due respect, Your Honor, I don't think that was the district court's purpose in imposing that. And the district court was able to clarify that in its written order. And, in fact, he explicitly rejected that contention by the defendant. So it's not humiliation. What is it? There is a humiliating effect. But his purpose, a primary goal, is to help Gentleman Terra understand both how the community at large is affected by the crime of male theft and how victims might have reacted if there were a way to ensure that he were able to have face-to-face contact with his victims. But aren't there ways of doing that, some of which have been discussed in the prior argument that don't involve the sandwich board equivalent of a stockade? My understanding, Your Honor, is that there's no way to require a victim to meet with Gentleman Terra. And since there's no way to require a victim to speak to him and to explain to him what effect this had on him, the judge is struggling to some extent to find a way to have Gentleman Terra experience, to have some real emotional connection with his victims and to develop some empathy. When you look at Gentleman Terra's criminal record, the crimes he's ---- He's got a drug problem. Yes. He's got a real drug problem. Most male thieves do, speed, whatever the drug of choice may be. Why can't the sentencing alternatives include treatment? They do, Your Honor. He's required to undergo drug rehabilitation, drug treatment program, drug testing, as well as reasonable searches to see whether he's possessing drugs. You have to admit this is more Jerry Springer than learned hand, don't you? It is an unusual condition of supervised release. Why would we want to encourage district judges to do this? The district court in this case was looking at someone who was not a hopeless case, and he wants to find a way to help that, to help this defendant, to bring this defendant around. When you look at his criminal history, the crimes he's committed are crimes that are either essentially victimless or he never comes into face-to-face contact with his victim, which lets ---- would let most of us think this is not such a bad thing, I'm not really hurting anybody. If the district court can find a way to explain to Gentleman Terra that there really are people who are hurt by this, there's a real reason that we consider this to be criminal conduct, then perhaps that will discourage Gentleman Terra from committing similar acts in the future. It really connects him to the community and gives him a better understanding of what he's done and why people are harmed by that. If we were to send this back for resentencing, Judge Williams could drop all of this at these conditions of relief and impose, what, a year in jail? Under the guidelines, 8 months would be the maximum. So he put him in jail for 8 months, so I assume he understands that. So this is a young man who would rather spend 8 months in jail than 1 day on the sidewalk. Doesn't that tell you a little bit about the impact of this? It does say it has a serious impact. But the district court, who has the responsibility in the first instance for developing the conditions of supervised release and for putting together the entire sentencing package, for balancing the length of prison with the length of supervised release, said, in fact, in this case, we think it's better to have the defendant serve this condition of supervised release. And this Court has looked at a case involving a defendant who said, don't give me supervised release, give me a longer prison term, and then no supervised release. And in Hurt, this Court said, we defer to the district court's decision, even if what the defendant wants is more prison time instead of supervised release. Which case is that, Your Honor? In Hurt. United States v. Hurt. Is there any scientific evidence to suggest that this kind of punishment has its desired effect, that is, if the desired effect was rehabilitation? Any scientific evidence or literature out there that suggests that that's the case? Your Honor, there was no evidence. There was no scientific evidence of any kind before the district court. So I take it Judge Williams had none of that kind of evidence to consider. None on either side. He had none on either side. And I take it the government did not suggest this form of punishment, did it? No. It was the district court's initiative at the outset. Is this punishment at all? Ms. Falk says you can't have punishment as a condition of supervised release. There is a punitive – we will acknowledge there's a punitive effect. But all conditions of supervised release have some punitive effect. Certainly, if any of us tomorrow suddenly had to consent to drug testing, if we had to inform the court or probation officer every time we moved or every time we left the district, we would consider that to be punitive. So there's certainly punitive effects of supervised release. But that was neither the intent nor the primary effect of this condition of supervised release. If the district court had really wanted to punish Giamantera through this, he could have found a way that would be much more stigmatizing and much more punitive. It could have required him to perform this wearing his briefs. He could have required him to stand in Ghirardelli Square. Or perhaps more damaging to the defendant, could have required him to do it right where his family and friends were likely to come into contact with him. That would have had a much more stigmatizing effect. This is actually relatively anonymous. It's not connected with his employer, with his colleagues, with his friends and family. Unlike in Clark, where this court upheld a defendant being required to publish an apology, both in the local newspaper and in his employer's newsletter, that seems to us to be far more stigmatizing because it's the people that know that defendant who are most likely to see that, to react to that, to cut out that snippet and hang it over their cubicles. That's much more stigmatizing than people he doesn't know coming by and seeing him wearing the sign. Your office defending this condition because you think it's a good idea or because you think it ought to be in the panoply of things available to a district judge? And I think I said Judge Williams. It's Judge Walker, of course. I mean, does the U.S. attorney really think this is a terrific idea? The primary interest is in ensuring that we uphold the district court's discretion in imposing conditions of supervised release, that they should be able to have a wide variety of conditions of supervised release available to them. It certainly can't be the case that any time a district court imposes a new condition of supervised release that it's automatically going to be struck down from above because Congress explicitly put together, explicitly granted to district courts the authority to impose any other condition of supervised release as long as it furthers the statutory objectives. So they must be able to find new ways of tailoring condition of supervised release that particularly meets that defendant. And we see that all the time in sexual offender cases that you are seeing more and more conditions of supervised release that are very carefully tailored to the crime that the defendant committed, such as in B, where the district court said you can't have any sexually explicit material that's not approved by the probation officer, you can't have any unauthorized contact with a minor, and you can't be within 100 feet of where minor's lawyer. Clearly, that's not set out in the standard probation conditions, but it very well fits the crime that the defendant had committed in that case. So it would be okay in a case of child molestation to require as a condition of supervised release that they wear a sign, march up in front of an elementary school with a sign saying, I'm a child molester, this is part of my punishment? Well, you think that would be less tailored to the crime and more punitive. Why? In this case, you have the inability that to do that. In the child molestation case, there was a victim, a specific victim that the defendant targeted. And what Genmenterra seems to be missing here is that there were real victims to his crime. So it's getting him into contact with people that are like his victims to help him develop empathy for those victims, whereas it's a different case when someone has already picked out a victim. I think crimes that involve face-to-face contact with victims themselves require different sorts of conditions of supervised release. We require public registration of convicted sex offenders. Is this analogous in any way? It's somewhat analogous. But we think the registration provisions do more to protect the community against that individual defendant because there's the real... Well, registration requires a photograph, name, actual address, things like that? Yes. The difference that we see here is in this case we acknowledge that it seems very unlikely that identifying Genmenterra at the post office as a mail thief is going to lead someone to identify him in an apartment complex six months down the road when he might be likely to steal mail again, whereas registration for sex offenders, it's intended exactly to do that. It's intended to notify parents and people in the community that they need to be on the lookout for this particular individual and may want to keep their children away from them. So we recognize that in that case the registration is particularly – serves that extra function. In this case, the deterrent effect is more towards Genmenterra to the extent that you can get – that the district court wants him to be sympathetic to his victims, have empathy for his victims, and then that will deter him from committing future crimes. If there are no further questions, Your Honor, we ask that this Court recognize that this condition of supervised release was within the district court's discretion and uphold the sentencing order. Thank you, counsel. Mr. Bucktail, you have some reserve time. Let me ask you a question. Have – we've sort of been assuming that your client would prefer to serve eight more months in jail rather than this one day. In other words, that's the tradeoff. He would rather take eight more months in jail than one day with the sign. Is – are you making that representation? No, no, no. First of all, he got two months on the first case, and when he came back before Judge Walker on the second case, as you might imagine, the court was unhappy and imposed the maximum term under the guidelines, which was eight months. So he's now serving consecutive, a total of 10 months. Well, if this were to be remanded, how much additional – do you agree with the government that he could have six more additional months? Is that right? What's the risk out there? That's probably the outside risk, and the risk to my client and to myself is that we're going to appear before an experienced district judge and have that court exercise his discretion. I don't see that as a huge risk. We're totally prepared for it. Yeah. But there is the potential for six more months of jail time, in addition to the 10 he's serving, versus one day with the sign. Well, yeah. But there's an assumption. And your client understands that risk. Of course. And there's an assumption in the court's question that there is a very close nexus between – No, we're just – No, no, no. All right. No, no. The issue is, is your – are you, on behalf of your client, conscious of the tradeoff here, that it's one day with the sign versus a potential additional six months in jail, and we have to assume that he would much rather risk six more months in jail than have to have one day with the sign? If I didn't ask for it in my brief, you could just delete the condition without a remand. Well, that may not have occurred. Even though I trust Judge Walker. As a former district judge, I would assume that you would go down on remand and say just strike that one condition, Judge, and that that's all that you can do, since he's already imposed the supervised release. That's probably what you're going to say, right? Couldn't have said it better myself. But the judge doesn't have to do that. Correct. All right. Just a couple of points. The government at sentencing did not oppose the sandwich board condition. They urged – well, they didn't urge. They suggested that it was appropriate. The only studies in the record are ones that suggest that there will be harm to Mr. if he is subjected to this humiliation. There is nothing else below. And there were no studies on the other end that were presented by the government in their briefing. I did want to say one thing about the seriousness of identity theft as an issue in society, and that's part of the danger that is presented to someone who has to stand in front of a post office in a public place wearing that kind of sandwich board. People are very nervous and angry about that type of thing, and it does present a real danger to have Mr. Gementera in that situation. That's part of the problem with this. I think the government makes an argument for us when it stands up here and says that there's no real – there's not going to be any harm to Mr. Gementera because there's no nexus between him and his conduct and the people that we would expect to be at the post office. That's exactly the point. He's not going to come into contact with his victims. There is no rehabilitation here, and there is no protection of the public. And that's exactly why Megan's law withstands scrutiny, because it does protect the public in a very real and tangible way. People can now go to an Internet site or whatever if some new person moves into their neighborhood, and they can identify whether or not this person is an offender that they should be aware of, and that protects the public. There's no protection of the public here. If I may ask for one minute for Miki Skirai to clarify one matter. No, thanks. I think you can speak for her. Okay. Let me just finish with this. I think that when the government says that we want to uphold the discretion of the district, the ability of the district court to have full discretion, I understand that there are some people in this country that think that there is some benefit to humiliation. But I think that most people agree that humiliation should not play any role in this country in our criminal justice system, and we shouldn't even do it to our enemies. All right. Thank you, counsel. The case just argued will be submitted for decision, and the court will hear argument in Sweet v. Energy v. Sierra Energy v. Tom's. Are all counsel present in that case? All right.
judges: O'scannlain, Siler , Hawkins